**MS&B**  McMANIMON • SCOTLAND • BAUMANN          75 Livingston Avenue, Roseland, NJ 07068  (973) 622-1800

**Anthony Sodono, III**
**Direct Dial:  (973) 721-5038**
**Direct Fax:  (973) 712-1463**
**asodono@msbnj.com**

August 2, 2023

<u>**Via ECF**</u>

Honorable John K. Sherwood
United States Bankruptcy Court
Martin Luther King Jr. Federal Building
50 Walnut Street
Newark, NJ  07102

   **Re:** **Daniel M. Risis**
      **Chapter 7**
      **Case No. 23-11800 (JKS)**

Dear Judge Sherwood:

This firm serves as co-counsel to Donald V. Biase, Chapter 7 Trustee ("**Trustee**") for Daniel M. Risis, Chapter 7 debtor ("**Debtor**") in the above-captioned matter.

Kindly accept this Letter Brief in lieu of a more formal brief in support of Trustee's *Notice of Motion to: (1) Approve and Authorize Payment of Fees and Expenses to McManimon, Scotland & Baumann, LLC, Co-Counsel to Donald V. Biase, Ch. 7 Trustee; (ii) Authorize a Mortgage on Any and All Real Property in Which the Debtor Has an Interest and a Judgment Lien on all of Debtor's Personal Property in Favor of Trustee and his Professionals; (iii) Authorize a Surcharge Against Mallary Risis' Equitable Share of Proceeds of Sale of 23 Linden Avenue, West Orange, NJ, as a Result of Damage Caused to Such Property That Was Under Mallary Risis' Custody and Control;  and (iv) Granting Such Other and Further Relief as This Court Deems Just and Proper* (the "**Motion**").

Honorable John K. Sherwood
August 2, 2023
Page 2

This case is an extreme example of a Debtor's hideous actions that resulted in intentional damage to real property, running up inordinate and unnecessary professional fees by filing excessive pleadings (at least 117 docket entries by Debtor alone resulting in over 300 docket entries related to the Debtor's conduct), not complying with Court Orders, Federal Rules of Bankruptcy Procedure and/or Local Rules of this Court, statutory mandates, attempt to steal property of the Estate, mocking the Court and professionals on almost every e-mail and at Court hearings and causing professionals to "oversee" the Debtor during removal of his personal property at the last minute.

As a microcosm of this case, Jonathan Sherman, Esq., counsel for the West Orange Buyer (defined below) sent Mr. Sodono the following email on July 20, 2023:

> Subject: RE: 23 Linden Ave, West Orange. Buyer Tremell McKenzie: Judge Signed Court Order Docs
>
> Good morning, everyone,
>
> As most of you are aware, the day the Seller vacated did not go well. The Seller showed up with an individual and set up a camera to record himself at the house where he disrespected my client and her realtor.
>
> The Seller caused a lot of unnecessary damage to the property and I am attaching the estimates for all the work required to bring this property back to the condition it was in prior to the Seller removing their personal items from the house. Please also see below and attached regarding the itemized list covering same:

*   *   *

A copy of the e-mail and attachments is annexed to the Certification of Anthony Sodono, Esq. filed in support hereof ("**Sodono Cert.**") as *Exhibit "B."*

Honorable John K. Sherwood
August 2, 2023
Page 3

      The Trustee (and McManimon, Scotland & Baumann, LLC ("**MS&B**") by this Motion) seeks approval of fees for MS&B, imposing a surcharge against Mallary Risis ("**M. Risis**"), the non-debtor spouse of the Debtor, granting mortgages on various properties owned by the Debtor and a judgment lien of all of Debtor's personal property in favor of the Trustee and his professionals. MS&B was retained to assist the Trustee in bringing this case to closure and get it dismissed. MS&B had to review and respond to Debtor's countless, frivolous motions and e-mails to the Court and otherwise. MS&B also had to personally supervise the Debtor at the 23 Linden Avenue, West Orange property (the "**West Orange Property**") so as to timely remove personal property and allow the closing (which should have been consummated by mail), and the Market Street, Newark property ("**Newark Property**.") for the same purpose. Without "babysitting" the Debtor, the closings never would have occurred. The Debtor's sophomoric conduct and insults were almost too much for anyone to bear, and MS&B needed to intervene to accomplish the closings. If MS&B did not insert itself in the process, it is highly likely the closings would have been delayed or never would have occurred.

      As to the surcharge, the Debtor and M. Risis insisted they did not want supervision in removing personal property from the West Orange Property (the West Orange Property was sold by the Trustee pursuant to Court Order (ECF 375)). The Trustee insisted that the Debtor and M. Risis be supervised in removal of their personal property; the Debtor and M. Risis vehemently argued otherwise. The Court ultimately conceded and allowed the Debtor and M. Risis to remove the property without oversight. Unfortunately, the Trustee's concerns about destruction of the property by the Debtor were realized, resulting in thousands of dollars in damage. The buyer of the West Orange Property, Tremell McKenzie ("**West Orange Buyer**") produced receipts for

Honorable John K. Sherwood
August 2, 2023
Page 4

damages. In sum, the West Orange Buyer alleges the Debtor: (1) forced open and broke the oven door – cost to repair/replace of $3,292.00; (2) broke open the custom side door and window of the door that leads into the kitchen - Provia Door custom – cost to repair/replace $8,262.00; (3) gouged the hardwood floors throughout the home – repair cost of $6,150.65; (4) attempted to steal generator – cost to repair $350;[1] (5) locksmith repair – cost of $458.29, (6) ripped thermostat out of the wall – cost repair/replace (destroyed sprinkler dial) $385.00, (7) washer/dryer taken despite being included in listing agreement $1,696.00, (8) Junk removal cost -- $850.87, (9) to ensure a smooth closing of the West Orange Property, the Trustee had to arrange for movers, A.J. Willner, to be on site to remove the Debtor's property if necessary - cost of $479.81. This was necessary because without removal of all the property the buyer would not close and since the Debtor delayed removal to the last minute, it was necessary to have A.J. Willner on standby. Thus, since M. Risis was in custody and control on the day she removed the personal property – July 7, 2023 (because she and Debtor insisted on not having Trustee oversight), she should be responsible for any damage. Mr. Sodono's attendance at the removal of the WO Property was also necessary – legal time $1,844. The Trustee seeks to surcharge M. Risis her one-half equity interest for the cost of damages to the West Orange Property, A.J. Willner's time, Mr. Sodono's time and any other incidental costs associated with the Debtor's mischief. It is unfortunate that the Debtor caused

---

[1] Upon Mr. Sodono's arrival at the West Orange Property on June 7, 2023, an across-the-street neighbor approached him and asked about the commotion caused by the Debtor. The neighbor then advised Mr. Sodono that the Debtor told the neighbor's wife to hold the generator in the neighbor's garage and that he would be back to get it. Thankfully, the neighbor turned the generator back over. Officer Louis, Badge # 405, from the West Orange Police Department was a witness to the return of the generator. The West Orange Buyer was also present. At the request of Officer Louis, Mr. Sodono sent pictures of the damage and the generator to Officer Louis' email address for documentation (the generator had to be repaired – it was in working order before removal).

Honorable John K. Sherwood
August 2, 2023
Page 5

damage to the West Orange Property to the prejudice of his spouse. Had he acted appropriately, M. Risis would be entitled to her entire one-half share.

Similar to his attempts to delay and hinder the closing of the West Orange Property, the Debtor attempted to hinder the Trustee's sale of the Newark Property. The Debtor did not have the proper personnel, equipment or trucks to remove the personal property. The Trustee had to arrange for A.J. Willner to assist, load a large truck of goods, and deliver it to Debtor's warehouse in Wayne (a cost of $799.69). Again, Mr. Sodono was required to be present and supervise the removal of personal property and "supervise" the Debtor. In fact, Mr. Sodono worked with the Debtor and A.J. Willner to physically carry out property so that the closing could occur. Without removing the property, the buyer of the Newark Property would not close.

The Debtor has unnecessarily caused professionals to incur fees and costs by filing at least 117 pleadings (resulting in over 300 filing on the docket that responded to Debtor), which required responses by the professionals. It is estimated that professionals will be owed in excess of $500,000 with approximately only $200,000 now available from the proceeds of sale from the West Orange Property and Newark Property. Any excess owed to professionals, once determined upon approval of professional fees must be secured by mortgages on the Debtor's properties and a judgment lien against the Debtor's personal property.

It was the Debtor that filed a voluntary Chapter 7 petition and caused all the turmoil; he must be made to pay for the services rendered by professionals. He has abused the system by docketing 117 entries, sending hundreds of e-mails, damaging property and causing mischief at each and every hearing and closing. As a result of the Debtor's behavior, the United States Marshals' service was required to be present at each hearing and the West Orange Police had to

Honorable John K. Sherwood
August 2, 2023
Page 6

be present at the closing of the West Orange Property. Additionally, but for MS&B's attendance at the Newark Property closing, certainly the police would have been needed there as well.[2]

## I. Approval of MS&B Fees and Costs

Pursuant to 11 U.S.C. § 503(b):

   (b)    After notice and a hearing, there shall be allowed, administrative expense, other than claims allowed under section 502(f) of this title, including:

       (1)(A)    the actual, necessary costs and expenses of preserving the estate . . .

11 U.S.C. § 503(b)(2023).

A claimant for an administrative award has the burden of proving that the Debtor's estate benefitted from the applicant's services to the extent of the claim allowed. *In re Molnar Brothers*, 200 B.R. 555, 559 (Bankr. D.N.J. 1996). Courts have established a two (2) part test for determining whether a debt should be afforded administrative priority: (1) if it arises from transaction with the debtor-in-possession; and (2) is beneficial to the debtor-in-possession in the operation of the business. *In re Jartran, Inc.*, 732 F.2d 584, 587 (7th Cir. 1984) (*citing In re Mammoth Mart, Inc.*, 536 F.2d. 950, 954 (1st Cir. 1976).

Annexed as *Exhibit "A"* to the Sodono Cert. is MS&B's in-house computer printout itemizing all services performed during the period May 7, 2023through July 31, 2023 (the "**Fee Period**"). As shown on such exhibit, MS&B has devoted 185.2 hours, having a value of $98,471.00, and incurred out-of-pocket expenses of $722.91 in this matter during the Fee Period, for a total of $99,193.91. Specifically related to attendance at the West Orange Property, MS&B

---

[2] The facts are supported in part by the Certifications of Anthony Sodono, III, Michele Dudas and Brian Boms, court-retained Realtor employed by Stack & Stack.

Honorable John K. Sherwood
August 2, 2023
Page 7

incurred fees of $1,844.00. All of the fees were fair and reasonable and MS&B is entitled to be paid directly from a surcharge of M. Risis's half interest for attendance at the West Orange Property removal of personal property. Other professional fees must be paid from either the West Orange Property or Newark Property sales proceeds after deduction for proper mortgage liens.[3] Any other professional fees must be secured by mortgages against the Debtor's real properties and judgment liens on personal property. Certainly, under Section 105 of the Bankruptcy Code, the Court has the authority to enter an Order approving liens and mortgages as a result of the Debtor's abhorrent conduct.

## II.    Mallary Risis Must Be Surcharged for Damage to the West Orange Property

As a result of the damage and misconduct of the Debtor, the Trustee seeks to surcharge M. Risis's half interest in the sale proceeds from the West Orange Property. The property was sold for $850,000. After payment of the mortgage and customary closing costs, the net sale proceeds are $330,394.40. A copy of the closing statement is annexed to the Certification of Michele M. Dudas, Esq. as *Exhibit "A."* Ms. Dudas is the MS&B attorney who handled the closing of the West Orange Property. The estate is entitled to one-half of the proceeds, and M. Risis is entitled to the other half. Thus, each party is entitled to $165,197.20. Also annexed to the Sodono Cert. as *Exhibit "B"* is an email he received from counsel to the West Orange Buyer and bills annexed thereto showing damages to the West Orange Property totaling $18,657.

The Trustee does not support all of the claims alleged by the West Orange Buyer. For example, although the washer and dryer were part of the sale and on the listing agreement, on the

---

[3] The Court stated it may surcharge the Porzio law firm mortgage for professional fees. Upon information and belief, Porzio has a mortgage lien against the West Orange Property, as well as real property owned by the Debtor and M. Risis located in Livingston, New Jersey and, thereby, can be satisfied from the Livingston property.

4865-3589-8228, v. 4

Honorable John K. Sherwood
August 2, 2023
Page 8

date of the closing, the buyer agreed to allow M. Risis to remove the washer and dryer. Also, the hardwood floors were not in perfect condition and Brian Boms from Stack and Stack, realtor for the Trustee took a video of the floors and there were scratches. Whether the Debtor further exacerbated the damage to the floors on removal of the property is uncertain. Thus, the Trustee does not agree to pay for the damaged floors. That said, however, M. Risis should be surcharged for the following damage caused by the Debtor while the West Orange Property was in her possession and control: (1) forced open and broke the oven door – cost to repair/replace $3,292.00; (2) broke open the custom side door and window of the door that leads into the kitchen - Provia Door custom – cost to repair/replace $8,262.00 (still waiting for additional information regarding the excessive cost of the door); (3) attempted to steal the generator – cost to repair $350.00; (4) locksmith repair -- $458.29; (5) ripped thermostat out of the wall – cost repair/replace (destroyed sprinkler dial) -- $385.00; (6) junk removal cost -  $850.87, (7) A.J. Willner - cost -- $479.81; (8) Mr. Sodono's attendance at the removal of the West Orange Property was also necessary – legal time $1,844.00.  It would be inequitable for the estate or the buyer to bear the brunt or cost of damages incurred during M. Risis's custody and control of the property. Thus, a deduction of $7,725.49 (half of $15,450.97) must be surcharged against M. Risis's one-half interest.

**III.     Imposition of Mortgages on Any and All of Debtor's Properties and a Judgment Lien on Personal Property**

The Debtor has caused the professionals to incur over $500,000 in fees and costs by filing at least 117 pleadings and running up excess costs with his misconduct (resulting in over 300 docket entries and dozens if not hundreds of emails). Any shortfall to professionals from sale

Honorable John K. Sherwood
August 2, 2023
Page 9

proceeds of the West Orange Property and Newark Property must be secured by mortgages on the Debtor's properties. His properties include the following:

- 19 Fordham Road, Livingston, NJ (co-owned with M. Risis)
- 1275 Route 23, Wayne, NJ (Dalex Development Corp.)
- 175-179 Broad Street, Phillipsburg, NJ (Goose Partners LLC)
- 17071 Ridge Road, Murray, New York (Red Oaks Country Club LLC)
- 340 Fleming Drive, Phillipsburg, NJ (Yenta LLC
- 857 Route 22, Lopatcong, NJ (Bromance, LLC)
- 859 Memorial Parkway, Lopatcong, NJ (Angry Saul Rand, LLC)
- 865 Route 22, Lopatcong, NJ (Toby's Cup, LLC)

(collectively referred to as the "**Mortgaged Properties**").

It would be unjust and inequitable to allow the Debtor to wreak havoc over this Court and professionals without compensating same. The professionals respectfully request an order imposing a mortgage on any properties the Debtor currently owns, including the Mortgaged Properties. Such order should include a provision that MS&B has authority as an attorney-in-fact to execute any and all documents on behalf of the Debtor to perfect the mortgages. Moreover, judgment liens must be imposed on any personal property assets of the Debtor. Such judgment liens should be allowed and authorized to be filed to perfect such liens and any recording office must be so ordered to allow the filing of the judgments.

Section 105(a) of the Bankruptcy Code provides as follows:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

Honorable John K. Sherwood
August 2, 2023
Page 10

Equitably, the Debtor must pay for the costs and fees he caused. Accordingly, the professionals request a mortgage on the Mortgaged Properties.

For the reasons set forth herein, the Trustee and MS&B request (1) approval of MSB's fees and costs, (2) surcharge of M. Risis's interest in the West Orange Property's sales proceeds, (3) a mortgage on the Mortgaged Properties and a judgment lien against any and all of the Debtor's properties in favor of the professionals[4]; and (4) such other and further relief as the Court deems just and proper.

We appreciate the Court's consideration.

Respectfully submitted,

*/s/ Anthony Sodono, III*

Anthony Sodono, III

---

[4] The professionals are well aware they must file fee applications on notice to all parties.