

**TIMOTHY P. DUGGAN**
DIRECT DIAL NUMBER
(609) 895-7353
DIRECT FAX NUMBER
(609) 895-7395
E-MAIL
tduggan@stark-stark.com

August 14, 2023

**Via ECF**

Honorable John K. Sherwood, U.S.B.J.
Martin Luther King, Jr. Federal Building
50 Walnut Street
Newark, NJ 07102

>    **Re:    Daniel M. Risis**
>    **Chapter 7 Case No. 23-11800 (JKS)**
>
>    **Hearing date:  August 17, 2023**

Dear Judge Sherwood,

This firm is counsel to PB Financing, LLP ("PB"). Please accept this letter brief in response to the Trustee's motion to (1) Approve and Authorize Payment of Fees and Expenses to McManimon, Scotland & Baumann, LLC, Co-Counsel to Donald V. Biase, Ch. 7 Trustee; (ii) Authorize a Mortgage on Any and All Real Property in Which the Debtor Has an Interest and a Judgment Lien on all of Debtor's Personal Property in Favor of Trustee and his Professionals; (iii) Authorize a Surcharge Against Mallary Risis' Equitable Share of Proceeds of Sale of 23 Linden Avenue, West Orange, NJ, as a Result of Damage Caused to Such Property That Was Under Mallary Risis' Custody and Control; and (iv) Granting Such Other and Further Relief as This Court Deems Just and Proper (the "Motion").

>    1.    No Objection to Allowance of Fees, Surcharge and Judgment.

PB does not object to the allowance of the legal fees and expenses requested by MS&B or the surcharge of Ms. Risis' interest in the proceeds of the sale of the West Orange Property. PB also does not object to the Court reducing the award of legal fees and expenses to a judgment. Once reduced to a judgment, MS&B can seek to collect on the judgment as a judgment creditor under state law. See Wolf v. Sweports, LTD. 2019 IL App. Unpub. LEXIS 758, at 28 (May 2, 2019) ("The Fee Order is therefore a judgment creating a debt of Sweports to appellants, which appellants may collect upon by registering the judgment in state court.")(attached as Exh. A). Also, PB does not object to MS&B and the Trustee's other counsel being paid from the proceeds of the sale of the West Orange Property.



STARK&STARK
ATTORNEYS AT LAW

2.    <u>Objection to Granting of Judgment Lien on Personal Property and Mortgages</u>.

MS&B should not receive any additional rights that would prime any existing judgment creditors, including PB, in either real or personal property. MS&B should be required to have the lien docketed under New Jersey law, obtain a writ of execution and perform a levy to obtain a lien on any personal property of the Debtor. There is no reason to allow MS&B to avoid these steps which could result in MS&B obtaining priority over other judgment creditors who are attempting to collect on their debts under state law, including PB.

As for the mortgages, the real estate that would be subject to the MS&B mortgages is not owned by Daniel Risis. Each parcel of real estate is owned by separate limited liability companies in which Mr. Risis has an ownership interest. Mr. Risis' membership interest in each limited liability company is (was) property of the estate and subject to an Article 9 security interest granted to PB.[1]  PB has obtained a charging order in state court enforcing PB's Article 9 lien and judgment lien against any distributions to be made to Mr. Risis from any limited liability company in which he has an interest.[2] See Exhibit "B" attached hereto. The Trustee's counsel is permitted to seek its own charging order, but it will be subject to the rights of PB.

The Court should not allow the Trustee's counsel to obtain a mortgage on the real property owned by each separate limited liability company because (1) there is no statute or case law that allows a bankruptcy court to grant an administrative creditor a mortgage against property owned by a debtor, and (2) there is no statute or case law that allows a bankruptcy court to grant an administrative creditor a mortgage on property owned by non-debtor entities. The practical effect of granting MS&B a superior priority interest in these assets would be to prime all pre-petition creditors in these assets.

PB supports MS&B's request for allowance of fees and expenses, surcharge of Ms. Risis' interest in the West Orange Property, payment of allowed fees from the sale proceeds of the West Orange Property, and entry of a judgment that can be registered in New Jersey state court. PB objects to the granting of a lien on any personal property owned by Mr. Risis and the granting of any mortgage lien.

Respectfully submitted,

STARK & STARK
A Professional Corporation


By:/s/ *Timothy P. Duggan*
     Timothy P. Duggan

---

[1]  See PB's Amended Proof of Claim filed April 10, 2023 (Claim No. 1) and Certification of Christopher Smith filed in support of PB's motion for relief from automatic stay (Doc 186-1). The Smith Certification attaches the relevant loan documents and UCC 1 financing statements.

[2] PB is entitled to any distributions made to this estate from the sale of the Newark property owned by Market Street, LLC.
4854-9940-7991, v. 3

EXHIBIT A

**A** Neutral

As of: August 9, 2023 8:20 PM Z

## *Wolf v. Sweports, Ltd.*

Appellate Court of Illinois, First District, Fourth Division

May 2, 2019, Order Filed

Nos. 1-18-0584 & 1-18-0587 (cons.)

**Reporter**

2019 IL App (1st) 180584-U *; 2019 Ill. App. Unpub. LEXIS 758 **

NEAL L. WOLF, Plaintiff-Appellant, v. SWEPORTS, LTD., Defendant-Appellee.PIERRE BENOIT & ASSOCIATES, INC., Plaintiff-Appellant, v. SWEPORTS, LTD., Defendant-Appellee.

**Notice:** THIS ORDER WAS FILED UNDER *SUPREME COURT RULE 23* AND MAY NOT BE CITED AS PRECEDENT BY ANY PARTY EXCEPT IN THE LIMITED CIRCUMSTANCES ALLOWED UNDER *RULE 23(e)(1)*.

**Subsequent History:** Appeal denied by *Wolf v. Sweports, Ltd., 2019 Ill. LEXIS 881 (Ill., Sept. 25, 2019)*

**Prior History:** [**1] Appeal from the Circuit Court of Cook County. No. 15 L 050717. Honorable Alexander P. White, Judge Presiding.

Appeal from the Circuit Court of Cook County. No. 15 L 050749. Honorable Alexander P. White, Judge Presiding.

**Disposition:** Reversed and remanded.

## Core Terms

fee order, bankruptcy court, appellants', circuit court, registrations, fee award, bankrupt estate, vacated, fee application, state court, obligor, bankruptcy proceedings, proceedings, registered, appellant's contention, reconsideration motion, lack of jurisdiction, foreign judgment, contending, standard of review, collateral attack, motion to strike, motion to vacate, final judgment, impermissible, appointed, judgments, comments, expenses, modify

**Judges:** JUSTICE BURKE delivered the judgment of the court. Justices Gordon and Reyes concurred in the judgment.

**Opinion by:** BURKE

## Opinion

### ORDER

**[*P1]** *Held*: We reverse the circuit court's judgment vacating appellants' registrations of their fee awards and remand for further proceedings.

**[*P2]** In April 2012, creditors of appellee Sweports, Ltd. (Sweports) filed an involuntary bankruptcy action against Sweports in the United States Bankruptcy Court for the Northern District of Illinois (Bankruptcy Court). The Bankruptcy Court appointed appellant Neal Wolf as counsel for the Official Committee of Unsecured Creditors (the "Committee") and appointed appellant Pierre Benoit & Associates, Inc. (Benoit) as financial advisor for the Committee in connection with Sweports' bankruptcy proceedings. The Bankruptcy Court dismissed Sweports' bankruptcy proceedings and thereafter appellants filed applications for fees. The Bankruptcy Court determined that it lacked subject matter jurisdiction to rule on the **[**2]** fee applications, but the Seventh Circuit reversed and remanded the case for the Bankruptcy Court to determine appellants' fee award. On remand, the Bankruptcy Court entered a fee order setting the amount of appellants' fees (Fee Order).

**[*P3]** Appellants separately registered their fee awards in the circuit court of Cook County as foreign judgments against Sweports. Sweports contended that the Fee Order and the registrations should be vacated because the Fee Order did not specify that Sweports was the obligor for the Fee Order. The circuit court granted Sweports' motion to vacate and dismiss the "alleged judgment" and appellants' registrations of the judgment pursuant to *sections 2-1203*, *2-1301*, and *2-1401* of the Illinois Code of Civil Procedure (Code). *735 ILCS 5/2-1203* (West 2014), *735 ILCS 5/2-1301* (West 2014), *735 ILCS 5/2-*

*1401* (West 2014). The circuit court subsequently granted appellants' motions to reconsider and vacated its dismissal of the registrations. While the motions to reconsider were pending, appellants filed motions in the Bankruptcy Court seeking clarification of the fee order, but the Bankruptcy Court declined to modify the order. Sweports filed a motion to strike the circuit court's grant of appellants' motion for reconsideration. The circuit court **[\*\*3]** granted Sweports' motion and vacated appellants' registrations of the fee order based on its finding that the Bankruptcy Court's Fee Order did not provide which party would pay the fees to appellants and the Bankruptcy Court's repeated refusal to modify its order indicated that it was only intended to determine the amount of appellants' fees. Appellants now appeal contending that the circuit court erred in finding that Sweports was not the obligor for their fees. For the reasons that follow, we reverse the judgment of the circuit court and remand the cause for further proceedings.

**[\*P4]**  I. BACKGROUND

**[\*P5]**  In April 2012, Sweports' creditors filed an involuntary Chapter 11 Petition (*11 U.S.C. § 303 (West 2012)*) in the Bankruptcy Court. *In re Sweports, Ltd., 511 B.R. 522 (Bankr. N.D. Ill. 2014)*. In March 2013, the Bankruptcy Court granted the Committee's motion to appoint Wolf as counsel and Benoit was retained as the Committee's financial advisor. On April 30, 2014, the Bankruptcy Court dismissed Sweports' Chapter 11 proceeding. Months after the case had been dismissed, appellants filed applications for fees. The Bankruptcy Court dismissed both applications for lack of jurisdiction. The court noted that an application **[\*\*4]** for fees, such as the one filed by appellants, is appropriate only where there is a bankruptcy estate. The court found that because the case had been dismissed, there was no longer a bankruptcy estate from which appellants could be paid. *In re Sweports, Ltd., 511 B.R. 522 (Bankr. N.D. Ill. 2014)*.

**[\*P6]**  Appellants appealed the Bankruptcy Court's ruling to the United States Court of Appeals for the Seventh Circuit. In their joint brief before the Seventh Circuit, appellants contended that the "sole issue presented for appeal *** [was] whether the Bankruptcy Court erred in ruling that it lacked subject matter jurisdiction to consider the" fee applications. The Seventh Circuit reversed the Bankruptcy Court's order finding that the Bankruptcy Court did have jurisdiction to rule on the fee applications and remanded the case for

the Bankruptcy Court to rule on the applications. *In re Sweports, Ltd., 777 F.3d 364, 368 (7th Cir. 2015)*, cert. denied, *Sweports, Ltd. v. Much Shelist, P.C., 135 S. Ct. 2811, 192 L. Ed. 2d 848 (2015)*. In reversing and remanding, the Seventh Circuit found:

> "It's true that with the bankruptcy dismissed the bankruptcy judge could no longer disburse assets of the debtor's estate to anyone; it had no assets; it was defunct. But the judge could determine that Wolf had a valid claim to a fee in the amount he was seeking. Such a ruling would create a debt **[\*\*5]** of Sweports to Wolf, and if Sweports refused (as Wolf expects it would) to pay, he could, like any other creditor, sue Sweports in state court." *Id. at 366-67*.

**[\*P7]**  The Seventh Circuit determined that the Bankruptcy Court could provide Wolf "meaningful relief" by entering an order "that Wolf could take into state court as a basis for obtaining damages from Sweports." *Id. at 367*. The court found that the order entered by the Bankruptcy Court "would merely establish a debt; to collect it [Wolf] will undoubtedly have to initiate a collection suit in state court." *Id.* The Seventh Circuit further found that the mere fact that Wolf did not file his fee application until after the dismissal of the Chapter 11 action did not divest the Bankruptcy Court of jurisdiction to rule on the application. "It merely gave Sweports a shot at a windfall—eliminating, by appealing to a wooden concept of jurisdiction, a debt that it had incurred." *Id.* The Seventh Circuit concluded that Wolf should be entitled to pursue his request for an award in the Bankruptcy Court "(not payment, but a determination of what he is owed)" for his services to the Committee. *Id. at 368*.

**[\*P8]**  On remand from the Seventh Circuit, the Bankruptcy Court entered the Fee Order **[\*\*6]** awarding Wolf $862,312.43 in fees and $6,234.89 in expenses and awarding Benoit $94,158.75 in fees and $1,659.38 in expenses. In so ruling, the Bankruptcy Court rejected Sweports' argument that appellants had failed to meet their burden of establishing their entitlement to the fees. Neither party appealed the Bankruptcy Court's Fee Order.

**[\*P9]**  In October 2015, Appellants registered their fee awards in the circuit court of Cook County as foreign judgments.[1] Sweports filed a motion to "vacate and

---

[1] We note that appellants' registrations of the Fee Order were separate actions in the circuit court, but the motions, exhibits,

dismiss plaintiff's alleged judgment and registration of same." In its motion, Sweports contended that the Bankruptcy Court's Fee Order was not a final or enforceable judgment. Sweports further contended that the Bankruptcy Court did not have the authority to "enter any judgment on fees or expenses" in favor of appellants "against Sweports." Sweports contended that the Fee Order was thus void *ab initio* to the extent that it might be construed as a final or enforceable judgment against Sweports. Sweports filed a memorandum in support of its motion in which it contended that the Fee Order was not a final judgment because it did not indicate an obligor or payor for the amounts owed to appellants. Sweports **[\*\*7]** contended that, in the alternative, the Fee Order was void because under *section 330(a)* of the Chapter 11 Bankruptcy Code (*11 U.S.C. § 330(a) (West 2014)*), appellants could obtain a fee judgment only from the "Debtor's Estate," and not the "Debtor" (Sweports), which are distinct entities in Chapter 11 bankruptcy proceedings.

**[\*P10]**  In response to Sweports' motion to dismiss, appellants contended that Sweports' motion represented an impermissible collateral attack on the Bankruptcy Court's Fee Order. Appellants further contended that the Fee Order was *res judicata* as to their entitlement to fees from Sweports. Appellants asserted that it was unnecessary for the Bankruptcy Court to identify Sweports as the obligor for the fees because bankruptcy courts do not "make it their practice to name the obligor in a final fee order because there is only one party that *could* be the obligor: the bankruptcy estate or, once the bankruptcy is dismissed, the debtor." Appellants contended that the Seventh Circuit's opinion was clear that Sweports was the obligor responsible for appellants' fees in this case.

**[\*P11]**  In February 2016, the circuit court granted Sweports' motion to vacate and dismiss the registration of the Fee Order. In so ruling, the **[\*\*8]** circuit court found that the Bankruptcy Court's Fee Order was unambiguous and could not be "rewritten to [appellants'] liking or to Sweports' prejudice." The court further found that the Bankruptcy Court originally declined to rule on appellants' fee application for lack of jurisdiction. In that ruling, the Bankruptcy Court found that a fee application is appropriate only where the professional is seeking an award payable from the bankruptcy estate. The

Bankruptcy Court further found that "[w]hether [appellants] have [a right under non-bankruptcy law to paid from another source] would have to be determined in some other forum." The circuit court found that in their appeal to the Seventh Circuit, appellants solely challenged the Bankruptcy Court's jurisdiction finding, and did not challenge the Bankruptcy Court's ruling "that they could seek fees from Sweports under *section 330(a)*, and/or that they could pursue fees based on non-bankruptcy law in Bankruptcy [C]ourt." The circuit court found that appellants were thereby barred under *res judicata* from any subsequent relitigation of that ruling.

**[\*P12]**  The circuit court found that the Bankruptcy Court had authority only to determine the amount of fees **[\*\*9]** and did not have jurisdiction to order Sweports to pay the fees. The circuit court therefore determined that the Fee Order was "void for uncertainty" because it did not provide that it was an enforceable judgment "against Sweports." The circuit court further found that to the extent the Fee Order was entered "against Sweports" it was void *ab initio* because the Seventh Circuit's ruling clearly limited the Bankruptcy Court's judgment to a determination of the amount owed to appellants and not a determination of who was responsible for the payment of the fees. Accordingly, the circuit court granted Sweports' motion to vacate and dismiss appellants' registration of the Fee Order.

**[\*P13]**  Appellants filed a motion for reconsideration of the circuit court's February 2016 judgment. While that motion was pending, appellants returned to Bankruptcy Court in April 2016 and filed a motion to clarify the Bankruptcy Court's Fee Order. In denying the motion, the Bankruptcy Court expressed doubt over whether it had subject matter jurisdiction to alter the Fee Order in the manner appellants sought. Nonetheless, the Bankruptcy Court found that its ruling was clear that the Seventh Circuit remanded the case **[\*\*10]** for the Bankruptcy Court to rule on the fee applications, and the court did so. The Bankruptcy Court stated there was no doubt what the Fee Order meant and the court did "exactly what the Court of Appeals told me to do." The Bankruptcy Court also noted that the circuit court had entered a lengthy judgment and the motion for clarification seemed like an "end run around what he's done." With regard to the circuit court's determination that the Bankruptcy Court's Fee Order was not a judgment, the Bankruptcy Court stated "It's not a judgment against Sweports. It was a fee award. I had fee applications, I granted them. **\*\*\*\*** You don't enter a judgment on a fee award. **\*\*\*\*** Whether it's a judgment

---

and orders were substantially similar in both cases and the actions have been consolidated in this appeal. Therefore, we will refer to the filings in Wolf's case only, unless otherwise noted.

for state law purposes is what state court judges like Judge White decide." The Bankruptcy Court therefore denied the motion finding that appellants had remedies in state court if they believed the circuit court's judgment was erroneous.

**[*P14]** Appellants filed a motion for relief from judgment in the Bankruptcy Court in May 2016 again seeking an order from the Bankruptcy Court that the Fee Order was "meant to be judgment in favor of [Appellants] and against Sweports []." The Bankruptcy Court likewise denied **[**11]** this motion, but stated that it needed to correct some of its comments from the April 2016 hearing. "First, I suggested that the [F]ee [O]rder entered in this case was not a judgment. That was not true." The Bankruptcy Court explained that under *Federal Rule of Civil Procedure 54(a)*, the matter was contested so it was a judgment for purposes of the Federal Rules. Nonetheless, the Bankruptcy Court refused to clarify the Fee Order finding that appellants had remedies in state court.

**[*P15]** In September 2016, the circuit court granted appellants' motion to reconsider. In granting the motion, the court found that the Bankruptcy Court's Fee Order represented a final judgment. Sweports filed a motion to reconsider and vacate the circuit court's September 2016 judgment contending that the circuit court erred in relying on the Bankruptcy Court's comments about the Fee Order in April and May 2016. Sweports contended that those comments showed that the Bankruptcy Court denied appellants' motions to "transform" the Fee Order into a judgment "against Sweports" and affirmed Sweports' contention that the Fee Order's failure to designate Sweports as the obligor was not a mistake or oversight. Sweports asserted that the Fee Order, therefore, **[**12]** unambiguously, is not a final or enforceable judgment "*against Sweports.*" (Emphasis in original.)

**[*P16]** In response, appellants contended that the Seventh Circuit's opinion in *In re Sweports*, clearly showed that the fee award was a debt enforceable against Sweports. Appellants contended that Sweports may not now challenge the ruling of the Seventh Circuit finding that Sweports would be the obligor for their fee awards. Sweports filed a reply to appellants' response reiterating the arguments in its original motion to vacate. Sweports contended that appellants' arguments regarding the Bankruptcy Court's April and May 2016 rulings were barred by *res judicata* or were impermissible collateral attacks on those judgments.

**[*P17]** In January 2017, appellants filed Writs of Execution to the United States Marshal in the Bankruptcy Court seeking to seize corporation stock from the office of Sweports' counsel. In subsequent motions, appellants again sought to establish that the Fee Order represented a final judgment establishing Sweports as the party responsible to pay their fees. The Bankruptcy Court granted Sweports' motion to quash the writs finding that it lacked jurisdiction to entertain appellants' collection **[**13]** proceedings. The Bankruptcy Court determined that in its opinion in *In re Sweports*, the Seventh Circuit expressly found that the Bankruptcy Court did not have jurisdiction to enforce the fee award. The Bankruptcy Court noted that the Seventh Circuit distinguished between the determination of appellants' fees and an order to pay them. Accordingly, the Bankruptcy Court determined that its jurisdiction extended only to determining appellants' compensation and not to ensuring payment.

**[*P18]** In March 2017, Sweports filed a motion in the circuit court to strike the Bankruptcy Court's Fee Order, and all of appellants' supplementary proceedings based upon lack of jurisdiction, or, in the alternative, to treat the motion as a sur-reply. In its motion, Sweports contended that the Bankruptcy Court's judgment quashing appellants' Writs of Execution represented the Bankruptcy Court's acknowledgment that it did not have jurisdiction to enter a fee award "against Sweports" and thus its Fee Order was void *ab initio* when treated as such a judgment.

**[*P19]** In February 2018, the circuit court entered its final judgment granting Sweports' motion to strike appellants' registration of the Fee Order and all of their **[**14]** supplementary proceedings. In so ruling, the court found that there is a distinction between a judgment stating that a party is entitled to fees and a judgment ordering that the fees are to be paid by a specific party. The court concluded that:

> "The plain language of the Bankruptcy Court's order provides that Wolf is entitled to fees, but does not provide which party is to pay said fees. [The Bankruptcy Court's] repeated refusals to modify the order indicate that it was intended to do no more the plain language dictates."

Appellants now appeal.

**[*P20]** II. ANALYSIS

**[*P21]** On appeal, appellants contend that Sweports lacked legal grounds to attack the Bankruptcy Court's

Fee Order. Appellants assert that Sweports' motion to vacate the Fee Order represented an impermissible collateral attack on the Fee Order. Appellants also contend that the Fee Order is clear that the fee awards are to be paid by Sweports and the Fee Order is *res judicata* as to appellants' right to receive the fees from Sweports. In their reply brief, appellants maintain that the "sole issue on appeal is whether the federal court judgments ordered by the Seventh Circuit are enforceable judgments entitled to full faith and credit under **[\*\*15]** Illinois law."

 **[\*P22]** A. Standard of Review

 **[\*P23]** Initially, we observe that the parties disagree as to the standard of review to be applied in this case. Somewhat confusingly, in their opening brief before this court, appellants cite the *Uniform Enforcement of Foreign Judgments Act (Act)* (*735 ILCS 5/12-650, et seq.* (West 2014)) as "*735 ILCS 5/1203, et seq.*" and contend that dismissals under that section are reviewed *de novo*. However, "*735 ILCS 5/1203, et seq.*" is neither the proper citation for the Act, nor, in fact, is it any Illinois statute. It appears, based on their subsequent arguments, that appellants were referring to *section 2-1203* of the Code. *735 ILCS 5/2-1203* (West 2014). *Section 2-1203*, however, concerns motions for rehearing, retrial, or modification, or vacation of a judgment after non-jury cases, and is not part of the Act. In this case, Sweports filed its initial motion to vacate appellants' registration of the Fee Order pursuant to *sections 2-1203(a)* and *(b)*[2]. *735 ILCS 5/2-1203(a)*, *(b)* (West 2014). In their response brief, Sweports latches onto this incorrect citation in contending that the grant or denial of motion under *section 2-1203* is reviewed for abuse of discretion.

 **[\*P24]** Without acknowledging the improper citation in their opening brief, in their reply brief appellants correctly identify the proper section in the Code for the Act and contend that our **[\*\*16]** standard of review is premised upon the striking of their registrations of the Fee Order and not upon the "trial court's consideration of the plethora of motions [Sweports] filed seeking to strike the registrations of Appellants' judgment." Appellants contend that the circuit court's vacation of

their registrations presents a question of law which we should review *de novo*.

 **[\*P25]** Appellants are correct that our standard of review is controlled by the judgment being appealed from. In this case, Sweports' motion seeking to strike appellants' registrations of the Bankruptcy Court's Fee Order that prompted the circuit court's ultimate ruling was premised upon the Bankruptcy Court's "lack of jurisdiction" to enter an order "against Sweports." In its motion, Sweports did not rely on a particular section of the Code in contending that the registrations should be vacated. In granting Sweports' motion, however, the circuit court cited *section 12-501* of the Code (*735 ILCS 5/12-501* (West 2014)), which concerns the registration of federal court judgments. The circuit court noted that this section is "part of the [Act]."[3]

 **[\*P26]** The Act is intended to implement the *full faith and credit clause of the federal constitution* and to facilitate interstate enforcement of judgments in a jurisdiction where **[\*\*17]** the judgment debtor is found. *Protein Partners, LLP v. Lincoln Provision, Inc., 407 Ill. App. 3d 709, 713, 941 N.E.2d 308, 346 Ill. Dec. 750 (2010)*. Once a judgment has been registered in Illinois under the Act, it may be collaterally attacked only on the grounds that:

> "(1) *the rendering court lacked subject matter or personal jurisdiction in the case*, or (2) the foreign judgment was procured by extrinsic fraud, or (3) the judgment has been satisfied or otherwise released, or (4) that the defending party was denied due process of law, or any other ground that would render the judgment invalid or unenforceable."

(Emphasis added.) *Protein Partners, 407 Ill. App. 3d at 716* (citing *Doctor's Associates, Inc. v. Duree, 319 Ill. App. 3d 1032, 1040, 745 N.E.2d 1270, 253 Ill. Dec. 736 (2001)*). Before the circuit court, Sweports' primary contention was that the Bankruptcy Court did not state in its Fee Order that the judgment was entered "against Sweports," and, in fact, the Bankruptcy Court could not enter such an order because it lacked the jurisdiction to do so. Sweports also made allegations of fraud against appellants. Sweports' motion to strike the Bankruptcy Court's Fee Order, its registration, and all of appellants'

---

[2] Sweports also sought to vacate appellants' registration of the fee order pursuant to *section 2-1301* (*735 ILCS 5/2-1301* (West 2014)) and *2-1401* (*735 ILCS 5/2-1401* (West 2014)) of the Code.

[3] Although *Section 12-501* is not technically part of the Act, the considerations for registering a federal judgment under that section are substantially similar to the considerations for registering a foreign judgment under the Act.

supplementary proceedings based on lack of jurisdiction thus could only be a challenge pursuant to the Act and not under *section 2-1203* as Sweports contends.

[*P27]  In this case, there was no evidentiary hearing and our review of the circuit court's judgment [**18] granting Sweports' motion to strike involves only questions of law. See *Thorson v. LaSalle National Bank, 303 Ill. App. 3d 711, 714, 708 N.E.2d 543, 236 Ill. Dec. 957 (1999)*, and authority cited therein. "The standard of review that applies to issues of law involving the registration of foreign judgments is *de novo*." *Protein Partners, 407 Ill. App. 3d at 713* (citing *Robillard v. Berends, 371 Ill. App. 3d 10, 14, 861 N.E.2d 1152, 308 Ill. Dec. 587 (2007))*. Accordingly, we will review the circuit court's judgment *de novo*.

[*P28]  B. Registration of a Foreign Judgment

[*P29]  As appellants recognize in their reply brief, the sole issue before us is whether the court erred in striking appellants' registration of the Fee Order as a foreign judgment enforceable against Sweports. Sweports raises several arguments regarding this court's ability to "convert" the Fee Order into a judgment against Sweports and whether its arguments before the circuit court represented impermissible collateral attacks on the Fee Order, but these arguments merely serve to obscure the issue. This is particularly true where the circuit court's final judgment in this case was straightforward and granted Sweports' motion to strike the appellants' registration of the Fee Order on the basis that the Bankruptcy Court did not indicate in the order that the fees awarded to appellants were to be paid by Sweports. As such, the question before us is whether the Bankruptcy [**19] Court's failure to designate Sweports as the payor or obligor, and its repeated refusals to modify the Fee Order to indicate as such, prevented appellants from registering the Fee Order as a judgment against Sweports.

[*P30]  1. *Section 330(a)* of the United States Code

[*P31]  At the outset, it is crucial to outline the basis of appellants' fee award. As counsel for the Committee, Wolf was employed pursuant to *section 327 of the Bankruptcy Code* (*11 U.S.C. § 327 (West 2012)*). Under *section 330 of the Bankruptcy Code*, "the court may award to *** a professional person employed under *section 327* *** reasonable compensation for actual, necessary services rendered by the *** professional

person, or attorney and by any paraprofessional person employed by any such person, and reimbursement for actual, necessary expenses." *11 U.S.C § 330(a)(1)(A), (B) (West 2012)*. Benoit, as financial advisor to the Committee, was employed pursuant to *section 328* (*11 U.S.C. § 328 (West 2012)*), which is not covered by *section 330*, but he agreed to have his compensation determined under *section 330(a)*. The reasonable compensation for necessary services and the reimbursement for necessary expenses comprise the professional's fee award. This was the basis for appellants' fee applications before the Bankruptcy Court that ultimately resulted in the Fee Order.

[*P32]  2. *Bankruptcy Estate*

[*P33]  Expenses incurred under *section 330(a)* are to be paid [**20] by the "bankruptcy estate." See *In re McDonald Brothers Construction, Inc., 114 B.R. 989, 994 (Bankr. N.D. Ill. 1990)*. The bankruptcy estate ceases to exists, however, after the dismissal of the bankruptcy proceeding. *11 U.S.C. § 349(b)(3) (West 2012)*. "Unless the court *** orders otherwise, a dismissal of a case *** revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title." *11 U.S.C. § 349(b)(3) (West 2012)*. Here, appellants filed their fee applications after the Bankruptcy Court dismissed Sweports' bankruptcy proceeding and thus the bankruptcy estate had already ceased to exist. This prompted the Bankruptcy Court to originally dismiss appellants' fee applications for lack of jurisdiction on the basis that there was no bankruptcy estate before that decision was reversed by the Seventh Circuit.

[*P34]  B. The Circuit Court Erred in Vacating Appellants Registration of the Fee Order

[*P35]  Despite the Seventh Circuit's reversal, however, this statutory construction relied upon by the Bankruptcy Court in its initial ruling is part of the basis of Sweports' contentions that appellants' registrations of the Fee Order should be vacated. Sweports contends that the Bankruptcy Court's jurisdiction, as conferred by the Seventh Circuit's opinion, [**21] extended only to determining the amount of appellants' fee awards and not in ordering Sweports, or anyone else, to pay the fee awards. Indeed, the Seventh Circuit recognized as much in its opinion stating: "It's true that with the bankruptcy dismissed the bankruptcy judge could no

longer disburse assets of the debtor's estate to anyone; it had no assets, it was defunct. But the judge could determine that Wolf had a valid claim to a fee in the amount he was seeking." *In re Sweports, Ltd., 777 F.3d at 366-67*. That is exactly what the Bankruptcy Court found in its Fee Order. It determined that appellants had a valid claim to a fee and it calculated the amount of that fee. "Such a ruling [created] a debt of Sweports to Wolf." *In re Sweports, Ltd., 777 F.3d at 367*. It was then incumbent upon Wolf, if Sweports refused to pay, to "sue Sweports in state court." *Id.* That it is precisely what appellants did in this case.

[*P36]    Sweports repeatedly emphasizes the Bankruptcy Court's post-Fee Order rulings that it could not modify or clarify the Fee Order as evidence that it is not responsible for appellants' fees. The Bankruptcy Court was correct, however, that the jurisdiction contemplated in the Seventh Circuit's opinion permitted the court to determine the amount of the fee [**22] award only. Any other relief appellants sought were state court remedies. The Bankruptcy Court's order created the debt in the amount of the fee awards, but it could not order Sweports to pay the debt. It is thus irrelevant that the Bankruptcy Court's Fee Order did not explicitly say that the fee awards were to be by paid "by Sweports" or that the Fee Order was entered "against Sweports." The Fee Order was entered in connection with Sweport's bankruptcy proceedings to determine the amount of debt that Sweports had incurred during the proceedings. There was no other possible entity that could have been responsible for the fees. If appellants had filed their fee applications before the dismissal of the bankruptcy proceedings, there is no question that Sweports' bankruptcy estate would be responsible for the fees. Upon the dismissal of the bankruptcy action, that debt would transfer to Sweports. See *In re Salazar, 2016 Bankr. LEXIS 4375, 2016 WL 7377043 (Bankr. D.N.M.), at 3* ("Further, even though the fee order authorized the bankruptcy estate to pay the allowed fees, it is clear that, after dismissal, the order obligates the debtors to pay the fees.")

[*P37]    Sweports is merely seeking a windfall based on a technical distinction, but as the Seventh Circuit recognized, [**23] Wolf's "postponement in filing his request until the bankruptcy was dismissed hurt no one." *In re Sweports, Ltd., 777 F.3d at 367*. "[T]here's no reason why dismissing the bankruptcy and leaving for later a determination by the bankruptcy judge of how much Sweports owed Wolf should be thought an alternative outside of the judge's jurisdiction." *Id. at 368*. The Seventh Circuit's opinion is thus clear that the

Bankruptcy Court's Fee Order created a debt Sweports owed to appellants, and appellants were then required to register that order in state court in order to collect on the fee award. Sweports' numerous filings before the circuit court and the myriad of issues it raises before this court are no doubt an attempt to obscure this rather straightforward ruling by the Seventh Circuit, but the import of the Seventh Circuit's opinion is clear and the Bankruptcy Court's Fee Order is consistent with that ruling. The Fee Order does not need to be "expanded" as the circuit court found to entitle appellants to the fee awards calculated by the Bankruptcy Court in its Fee Order.

[*P38]    We find *Morgan & Bley, Ltd. v. Victoria Grp., Inc., 2015 U.S. Dist. LEXIS 61180, 2015 WL 2258416 (N.D. Ill.)* cited by appellants persuasive. In *Morgan*, Victoria Group (Victoria) was a debtor in a Chapter 11 bankruptcy case. *Morgan, 2015 U.S. Dist. LEXIS 61180, 2015 WL 2258416 at 1*. Morgan & Bley was appointed as counsel [**24] for Victoria under *11 U.S.C. §§ 327, 328*, and *1107(b)*. *Id.* Victoria's principal creditor, Northbook Bank, claimed that Victoria's bankruptcy was "plagued with problems" and moved to appoint a trustee to manage the debtor's estate. *Id.* Shortly thereafter, Morgan & Bley filed a motion to withdraw as counsel and then filed a final fee petition seeking payment for services rendered to Victoria. *Id.* Before the fee petition was resolved, Northbrook Bank moved to dismiss the bankruptcy action. *2015 U.S. Dist. LEXIS 61180, [WL] at 2*. During the hearing on the motion to dismiss, the bankruptcy court determined that Morgan & Bley's fees were reasonable, but did not want Victoria's payment of the fees to interfere with its ongoing business. *Id.* Accordingly, the bankruptcy court did not want Morgan & Bley's fee award to be a "judgment" so that Morgan & Bley would not be able to do an "end-around" on the court's decision and recover its fees in a manner that affected Victoria's ongoing business. *Id.* The court found that the distinction was irrelevant, however, because "the only reason why Morgan & Bley would need an order approving fees is if it were going to take the money out of the estate. And there is no estate anymore the moment the court dismisses the [**25] case." (Internal quotation makes omitted.) *Id.*

[*P39]    Despite the bankruptcy court's statements during the hearing, Morgan & Bley registered the fee order as a judgment against Victoria in the Circuit Court of Cook County. *Id.* Northbrook Bank and Victoria returned to the bankruptcy court seeking to reopen the bankruptcy case and vacate the fee award. *2015 U.S. Dist. LEXIS 61180, [WL] at 2-3*. The bankruptcy court

denied the motion finding that the order granting Morgan & Bley's fee application "'contained no mistake and the award was against the bankruptcy estate, not the Debtor, and the Court did not enter a 'judgment.' "" *2015 U.S. Dist. LEXIS 61180, [WL] at 3*.

[*P40]  Morgan & Bley appealed that decision to the United States District Court for the Northern District of Illinois. On appeal, the District Court determined that the "critical question" was "whether the second portion of the bankruptcy court's order, which characterized the fee award as something that was not a 'judgment' and that was solely against the now-extinguished bankruptcy estate, was in error." *Id.* In evaluating Morgan & Bley's claim, the District Court determined that the language of the fee order, and not the bankruptcy court's intent, controlled. *2015 U.S. Dist. LEXIS 61180, [WL] at 4* (citing *Mendez v. Republic Bank, 725 F.3d 651, 663 (7th Cir. 2013))*. The District Court noted that the text of [**26]  the fee order stated that Morgan & Bley were "granted final-post petition compensation" of $24,806. *Id.* The District Court determined that the bankruptcy court's refusal to term the award a "judgment" did not change that the order "'set forth the relief to which the prevailing party is entitled.'" *Id.* (quoting *Paganis v. Blonstein, 3 F.3d 1067, 1069 (7th Cir. 1993))*. The District Court determined that the bankruptcy court's statement that the fee order was not a "judgment" was therefore incorrect. *Id.*

[*P41]  Relying on the Seventh Circuit's decision in *In re Sweports*, the District Court found that the bankruptcy court was also incorrect in finding that the fee award was entered only against the estate, which ceased to exist when the bankruptcy case was dismissed. *Id.* The District Court held that the fee order was therefore a "judgment" enforceable against the debtor, Victoria, despite the bankruptcy court's comments to the contrary. *2015 U.S. Dist. LEXIS 61180, [WL] at 5*. The District Court determined that the bankruptcy court's order finding that the fee order was not a "judgment" and was only entered against the estate, therefore, constituted an impermissible modification of the fee order. *Id.*

[*P42]  Here, the arguments Sweports makes in opposition to appellants' registration of the Fee [**27] Order are nearly identical to the arguments rejected by the *Morgan* court. Although the Fee Order here does not specifically state that it is a "judgment" or that it is enforceable "against Sweports" it nonetheless sets forth the relief to which appellants were entitled. It was therefore a judgment. Similarly, Sweports contention

that the Fee Order could only be entered against the bankruptcy estate and not against Sweports, as the debtor, is likewise unfounded. *In re Salazar, 2016 Bankr. LEXIS 4375, 2016 WL 7377043 (Bankr. D.N.M.), at 3*.

[*P43]  The Fee Order here, like the fee order in *Morgan*, is therefore an enforceable judgment entered against the debtor, Sweports, which may be registered against Sweports in state court. We find nothing in the Bankruptcy Court's comments in this case that would preclude this finding. Indeed, the Bankruptcy Court recognized that the Fee Order was a judgment and we are not deterred by the Bankruptcy Court's repeated refusals to "clarify" the Fee Order as the Bankruptcy Court was correct in finding that its jurisdiction was limited to a determination of appellants' fees. Thus, the Fee Order was entered in connection with a Chapter 11 bankruptcy proceeding in which Sweports was the debtor and the language of the Fee Order sets forth [**28] the relief to which appellants were entitled. The Fee Order is therefore a judgment creating a debt of Sweports to appellants, which appellants may collect upon by registering the judgment in state court. The circuit court thus erred in vacating appellants' registrations of the Fee Order.

[*P44]  III. CONCLUSION

[*P45]  We therefore reverse the circuit court's judgment and remand the cause for further proceedings consistent with this order.

[*P46]  Reversed and remanded.

---

End of Document

**EXHIBIT B**

**FILED**

*3:43 pm, Jul 21, 2023*

**STARK & STARK, P.C.**
Timothy P. Duggan, Esq. – Attorney ID No. 037691991
P.O. Box 5315
Princeton, New Jersey 08543-5315
(609) 896-9060
Attorneys For Plaintiff, PB Financing LLC

| | |
|---|---|
| PB FINANCING LLC, | SUPERIOR COURT OF NEW JERSEY |
| | LAW DIVISION |
| Plaintiff, | ESSEX COUNTY |
| v. | DOCKET NO. DJ-35584-22 |
| DANIEL RISIS; MARGARITA RISIS; | Civil Action |
| DANIEL MARKUS INC D/B/A | |
| PERFECT PAWN D/B/A CASH COW | **ORDER GRANTING RELIEF** |
| D/B/A FLEA MARKET OUTLET | |
| | |
| Defendants. | |

This matter having been opened to the Court by way of motion (the "Motion") of PB

Financing, LLC ("PB"), seeking (1) Charging Oder, (2) Order for Garnishment, (3) Order for Turnover of

Collateral, (4) Order for Issuance of Writ of Replevin, (5) Order for Constructive Levy, (6) Order Permitting

Levy on Real Property, and (7) Order for Discovery; due notice having been given to the Defendants;

and the Court having reviewed the moving papers and any opposition; and for good cause

shown:

It is Ordered on this 21st day of July 2023, that:

1. The Motion is granted.

   **A. Charging Order and Garnishment**

2. Pursuant to N.J.S.A. 42:2C-43 and 42:2C-7, Daniel M. Risis' transferable interest in each of

   the following Limited Liability Companies is hereby subject to the lien of PB and each of the

   following Limited Liability Companies shall pay over to PB any distribution that would

   otherwise be paid to Daniel M. Risis.  The Subject LLCs are:

STARK & STARK

ATTORNEYS AT LAW
MAILING ADDRESS
PO BOX 5315
PRINCETON, NJ 08543

a. Amazoned LLC,

b. Goose Partners LLC,

c. Bromance, LLC,

d. Toby's Cup LLC,

e. Angry Saul Rand, LLC,

f. Zohan LLC,

g. Fresh Cold Storage LLC,

h. Red Oaks Country Club, LLC,

i. Barre Naked LLC,

j. Sunny Orange LLC,

k. Hamburglers LLC,

I. Boarscht LLC,

m. Daniel Markus Inc.,

n. Dalex Development Inc.,

o. Black Diamond Development,

p. Market Street Holdings LLC,

q. Yenta LLC,

r. Mikrobank LLC,

s. Silver Member LLC,

t. Cash Cow Storage LLC,

u. Dayat Merchandising LLC,

v. Maintain Land LLC,

STARK & STARK

ATTORNEYS AT LAW
MAILING ADDRESS
PO BOX 5315
PRINCETON. NJ 08543

-2-

4889-7734-0270. v. 1

       w. Party on Wayne LLC,

       x. Pawnpire Platform LLC,

       y. Apple Jews LLC,

       z. Rock Safe LLC

       aa. BGM Buyers Club LLC

       bb. Microbank

3.  PB is hereby deemed to have levied upon Daniel M. Risis' membership interest in the Subject LLCs. PB is also deemed to have a perfected Article 9 security interest in Daniel M. Risis' membership interest in the Subject LLCs.

4.  Pursuant to <u>N.J.S.A.</u> 2A:17-63 and N.J. Court R. 4:59-1(a), any money or funds that the Subject LLCs owe to Daniel M. Risis for any reason are hereby garnished in favor of PB and the Subject LLCs shall pay directly to PB any money or other consideration owed to Daniel M. Risis.

5.  Daniel M. Risis is hereby retrained and enjoined from taking and distribution or receiving any money or other compensation from the Subject LLCs, pending further order of this Court.

**B.  <u>Levy, Writ of Replevin and Turnover of Collateral</u>**

6.  Daniel M. Risis filed a bankruptcy schedule with the United States Bankruptcy Court which lists personal property he owns, said schedule being attached hereto as Exhibit "A" (the "Bankruptcy Schedule"). The Bankruptcy Schedules disclose that Daniel M. Risis owns the following personal property: Kubota tractor (the "Kubota Tractor"), Riker Cam Am 900 and Can Am Outlander 65 (the "Vehicles"), a watch collection (the "Watches"), tools (the "Tools"), trademarks, copyrights and patents under the names Mikrobank, Cash Cow Storage

STARK & STARK
ATTORNEYS AT LAW
MAILING ADDRESS
PO BOX 5315
PRINCETON, NJ 08543

-3-

4889-7734-0270. v. 1

and PawnPire (the "IP"),  inventory valued at $2,000,000 (the "Inventory") and household furniture and fixtures (the "Household Goods").

7. PB is hereby deemed to have levied on the Kubta Tractor, Vehicles, Watches, Tools, IP, Inventory and Household Goods.  Pending turnover of said collateral to the Sheriff of Essex County, the levy shall be deemed a constructive levy and Daniel M. Risis is hereby retrained and enjoined from transferring, encumbering or disposing of the Kubta Tractor, Vehicles, Watches, Tools, IP, Inventory and Household Goods.

8. PB is granted a judgment for possession of the Kubta Tractor, Vehicles, Watches, Tools, IP, Inventory and Household Goods.

9. Daniel M. Risis is ordered, upon service of this Order to deliver to PB and/or the Sheriff of Essex County and/or Sheriff of Warren County, possession of the Kubta Tractor, Vehicles, Watches, Tools, IP, Inventory and Household Goods.

10. The Clerk of the Court is hereby directed to issue a Writ of Replevin to Plaintiff for delivery to the Sheriff of Essex County and Sheriff of Warren County.

11. In the event that Daniel M. Risis refuses to so deliver the Kubta Tractor, Vehicles, Watches, Tools, IP, Inventory and Household Goods to PB and/or the Sheriff of Essex County and/or the Sheriff of Warren County within ten (10) days of the mailing of this Order to Daniel M. Risis, this Order shall be sufficient authority for the Sheriff to enter upon Daniel M. Risis' premises or the property of any third party and take possession of the Kubta Tractor, Vehicles, Watches, Tools, IP, Inventory and Household Goods. and deliver said collateral to PB forthwith.

12. In the event the Kubta Tractor, Vehicles, Watches, Tools, IP, Inventory and Household Goods are not physically present at Daniel M. Risis' premises, Daniel M. Risis shall disclose to PB

STARK & STARK

ATTORNEYS AT LAW
MAILING ADDRESS
PO BOX 5315
PRINCETON, NJ 08543

-4-

4889-7734-0270. v. 1

and/or the Sheriff the exact location of the Kubta Tractor, Vehicles, Watches, Tools, IP, Inventory and Household Goods and take all steps necessary to deliver the Kubta Tractor, Vehicles, Watches, Tools, IP, Inventory and Household Goods. To PB and/or the Sheriff

13. PB is not required to post a replevin bond or deliver cash deposit to the Sheriff of any County in the State of New Jersey where the collateral may be located.

14. In the event that Daniel M. Risis does not turnover the Levied Collateral to the Sheriff as requirement by paragraph 8, PB shall be deemed to have levied on Daniel M. Risis' real estate located at 19 Fordham Place, Livingston New Jersey (the "Risis Home"). The levy shall be deemed a constructive levy and PB shall be deemed to have levied under New Jersey law and have a perfected judgment lien. PB shall not be entitled to sell Daniel M. Risis' interest in the Risis Home absent further Court Order.

15. Nothing in the Order shall impair or prejudice PB's rights to seek to collect on the balance due and owing from Daniel M. Risis or any other judgment Debtor or seek a charging order from any other entities.

**C. Discovery**

16. Within ten (10) days of the entry of this Order, Daniel M. Risis shall produce all documents listed on the Petition for Discovery attached hereto as Exhibit "B".

17. On August 24, 2023, Daniel M. Risis shall appear at the law offices of Stark & Stark located at 100 American Metro Boulevard, Hamilton, NJ 08619, for the purposes of a deposition.

18. A copy of this Order shall be served by counsel for PB within seven (7) days of entry.

STARK & STARK

ATTORNEYS AT LAW
MAILING ADDRESS
PO BOX 5315
PRINCETON, NJ 08543

X Unopposed

/S/ Robert H. Gardner, J.S.C.

Hon, ROBERT H. GARDNER, J.S.C.

-5-

4889-7734-0270. v. 1

# EXHIBIT "A"

---

**Fill in this information to identify your case and this filing:**

| | | | |
|---|---|---|---|
| Debtor 1 | Daniel M. Risis | | |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse, if filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: _____ District of _____ | | | |
| Case number | 23-11800-7NEW | | |

☐ Check if this is an amended filing

## Official Form 106A/B

# Schedule A/B: Property                                                12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:    Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In**

1. Do you own or have any legal or equitable interest in any residence, building, land, or similar property?

☐ No. Go to Part 2.
☑ Yes. Where is the property?

**1.1.**  19 Fordham Road
Street address, if available, or other description

Livingston     NJ     07039
City           State   ZIP Code

Essex
County

**What is the property?** Check all that apply.
☑ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other_____

**Who has an interest in the property?** Check one.
☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number: _____

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

Current value of the entire property?   Current value of the portion you own?
$    4,000,000.00       $   3,100,000.00

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.
Fee Simple

☐ Check if this is community property (see instructions)

If you own or have more than one, list here:

**1.2.**  23 Linden Ave
Street address, if available, or other description

West Orange     NJ     07052
City            State   ZIP Code

Essex
County

**What is the property?** Check all that apply.
☑ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other_____

**Who has an interest in the property?** Check one.
☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number: _____

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

Current value of the entire property?   Current value of the portion you own?
$    950,000.00        $   500,000.00

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.
Fee Simple

☐ Check if this is community property (see instructions)

Debtor 1    Daniel M. Risis
First Name    Middle Name    Last Name

Case number (if known) 23-11800-7NEW

**1.3.** 1275 Rt 23
Street address, if available, or other description

Wayne          NJ      07470
City           State   ZIP Code

Passaic
County

**What is the property?** Check all that apply.
- ☐ Single-family home
- ☐ Duplex or multi-unit building
- ☐ Condominium or cooperative
- ☐ Manufactured or mobile home
- ☐ Land
- ☑ Investment property
- ☐ Timeshare
- ☐ Other _____

**Who has an interest in the property?** Check one.
- ☑ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another

**Other information you wish to add about this item, such as local property identification number:** _____

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| $ 4,000,000.00 | $ 3,050,000.00 |

**Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.**
Dalex Development LLC

- ☐ Check if this is community property (see instructions)

**2.** Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here. ...................................................➔ $ 12,545,000.00

---

**Part 2:    Describe Your Vehicles**

Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not? Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

**3. Cars, vans, trucks, tractors, sport utility vehicles, motorcycles**
- ☐ No
- ☑ Yes

**3.1.** Make:    AUDI
Model:    RS5
Year:    2019
Approximate mileage:    45000
Other information:
9739130883

**Who has an interest in the property?** Check one.
- ☑ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another

- ☐ Check if this is community property (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| $ 70,000.00 | $ 43,000.00 |

If you own or have more than one, describe here:

**3.2.** Make:    KUBOTA
Model:    Credit
Year:
Approximate mileage:
Other information:
90211103

**Who has an interest in the property?** Check one.
- ☑ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another

- ☐ Check if this is community property (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| $ 150,000.00 | $ 90,000.00 |

Debtor 1   **Daniel M. Risis**
First Name   Middle Name   Last Name                                      Case number *(if known)* 23-11800-7NEW

---

**3.3.** Make: **Dodge**

Model: **Ram**

Year: **2018**

Approximate mileage: **80000**

Other Information:

**228077895023**

Who has an interest in the property? Check one.

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this is community property (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| $ 46,000.00 | $ 20,000.00 |

---

**3.4.** Make:

Model:

Year:

Approximate mileage:

Other Information:

Who has an interest in the property? Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this is community property (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| $ | $ |

---

4. **Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories**
   *Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

☐ No
☑ Yes

---

**4.1.** Make: **RIKER**

Model: **CAN AM 900**

Year: **2019**

Other Information:

Who has an interest in the property? Check one.

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this is community property (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| $ 8,000.00 | $ 8,000.00 |

---

If you own or have more than one, list here:

**4.2.** Make: **CAN AM**

Model: **OUTLANDER 65**

Year: **2018**

Other information:

Who has an interest in the property? Check one.

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this is community property (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| $ 6,000.00 | $ 6,000.00 |

---

5. **Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for pages you have attached for Part 2. Write that number here** ..................................................➔

$ 167,000.00

---

Official Form 106A/B                    Schedule A/B: Property                                      page 3

Debtor 1 ___Daniel M. Risis_____    Case number (if known) _23-11800-7NEW___
            First Name    Middle Name    Last Name

---

**Part 3:    Describe Your Personal and Household Items**

| Do you own or have any legal or equitable interest in any of the following items? | Current value of the portion you own?<br>Do not deduct secured claims or exemptions. |
|---|---|

6. **Household goods and furnishings**

   *Examples: Major appliances, furniture, linens, china, kitchenware*

   ☐ No
   ☑ Yes. Describe.......... basic home furnishings    $    50,000.00

7. **Electronics**

   *Examples: Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices including cell phones, cameras, media players, games*

   ☐ No
   ☑ Yes. Describe.......... laptop & cell phone    $    3,000.00

8. **Collectibles of value**

   *Examples: Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections; other collections, memorabilia, collectibles*

   ☑ No
   ☐ Yes. Describe..........    $

9. **Equipment for sports and hobbies**

   *Examples: Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools; musical instruments*

   ☐ No
   ☑ Yes. Describe.......... photo equipment, bikes and skis    $    8,000.00

10. **Firearms**

    *Examples: Pistols, rifles, shotguns, ammunition, and related equipment*

    ☑ No
    ☐ Yes. Describe..........    $

11. **Clothes**

    *Examples: Everyday clothes, furs, leather coats, designer wear, shoes, accessories*

    ☐ No
    ☑ Yes. Describe.......... general wardrobe    $    6,000.00

12. **Jewelry**

    *Examples: Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver*

    ☐ No
    ☑ Yes. Describe.......... watch collection    $    45,000.00

13. **Non-farm animals**

    *Examples: Dogs, cats, birds, horses*

    ☑ No
    ☐ Yes. Describe..........    $

14. **Any other personal and household items you did not already list, including any health aids you did not list**

    ☐ No
    ☑ Yes. Give specific information. .............. Tools    $    50,000.00

15. Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached for Part 3. Write that number here .................................................................................................. →    $    182,000.00

---

Debtor 1    Daniel M. Risis
            _____    Case number (if known) 23-11800-7NEW
            First Name    Middle Name    Last Name

| Part 4: | Describe Your Financial Assets |

**Do you own or have any legal or equitable interest in any of the following?**

Current value of the portion you own?
Do not deduct secured claims or exemptions.

**16. Cash**

*Examples:* Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition

☑ No
☐ Yes ........................................................................................................................    Cash: ..................   $_____ 0.00

**17. Deposits of money**

*Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar institutions. If you have multiple accounts with the same institution, list each.

☐ No
☑ Yes ....................

Institution name:

| | | | | |
|---|---|---|---|---|
| 17.1. | Checking account: | PNC Bank- Cash Cow Storage | $ | 2,505.75 |
| 17.2. | Checking account: | PNC Bank- Black Diamond Development | $ | 9.73 |
| 17.3. | Savings account: | PNC Bank - Dayat Merchandising | $ | 4.85 |
| 17.4. | Savings account: | PNC Bank - Cash Cow Vendor Account | $ | 24.46 |
| 17.5. | Certificates of deposit: | TD Bank- Dalex Development | $ | 0.00 |
| 17.6. | Other financial account: | TD Bank - Market Street Holdings | $ | 0.00 |
| 17.7. | Other financial account: | TD Bank- Yenta | $ | 0.00 |
| 17.8. | Other financial account: | Tipton Escrow Account | $ | 107,000.00 |
| 17.9. | Other financial account: | PNC Bank - Goose | $ | -220.66 |

**18. Bonds, mutual funds, or publicly traded stocks**

*Examples:* Bond funds, investment accounts with brokerage firms, money market accounts

☑ No
☐ Yes ................

Institution or issuer name:

_____    $_____
_____    $_____
_____    $_____

**19. Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture**

☐ No            Name of entity:                                    % of ownership:
☑ Yes. Give specific    See Attached                                    100%  %    $     9,522,000.00
information about    _____    0%    %    $_____
them....................    _____    0%    %    $_____

| Debtor 1 | Daniel M. Risis | | | Case number (if known) | 23-11800-7NEW |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

**20. Government and corporate bonds and other negotiable and non-negotiable instruments**

*Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
*Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.

☑ No
☐ Yes. Give specific   Issuer name:
information about
them......................   _____   $_____
_____   $_____
_____   $_____

**21. Retirement or pension accounts**

*Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans

☑ No
☐ Yes. List each       Type of account:      Institution name:
account separately.

401(k) or similar plan:   _____   $_____

Pension plan:   _____   $_____

IRA:   _____   $_____

Retirement account:   _____   $_____

Keogh:   _____   $_____

Additional account:   _____   $_____

Additional account:   _____   $_____

**22. Security deposits and prepayments**

Your share of all unused deposits you have made so that you may continue service or use from a company
*Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications
companies, or others

☑ No
☐ Yes...........................     Institution name or individual:

Electric:   _____   $_____

Gas:   _____   $_____

Heating oil:   _____   $_____

Security deposit on rental unit:   _____   $_____

Prepaid rent:   _____   $_____

Telephone:   _____   $_____

Water:   _____   $_____

Rented furniture:   _____   $_____

Other:   _____   $_____

**23. Annuities** (A contract for a periodic payment of money to you, either for life or for a number of years)

☑ No
☐ Yes...........................   Issuer name and description:
_____   $_____
_____   $_____
_____   $_____

Debtor 1    Daniel M. Risis _____    Case number (if known) 23-11800-7NEW
             First Name    Middle Name    Last Name

**24. Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**
26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).

☑ No

☐ Yes .................................. Institution name and description. Separately file the records of any interests.11 U.S.C. § 521(c):

_____    $ _____
_____    $ _____
_____    $ _____

**25. Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit**

☑ No

☐ Yes. Give specific
information about them....                                               $ _____

**26. Patents, copyrights, trademarks, trade secrets, and other intellectual property**
*Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements

☐ No

☑ Yes. Give specific     Mikrobank; Cash Cow Storage; PawnPire
information about them...                                               $    5,000,000.00

**27. Licenses, franchises, and other general intangibles**
*Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses

☑ No

☐ Yes. Give specific
information about them....                                               $ _____

**Money or property owed to you?**

                                              Current value of the
                                              portion you own?
                                              Do not deduct secured
                                              claims or exemptions.

**28. Tax refunds owed to you**

☑ No

☐ Yes. Give specific information
about them, including whether
you already filed the returns     Federal:    $ _____
and the tax years. ...............   State:      $ _____
                                   Local:      $ _____

**29. Family support**
*Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement

☐ No

☑ Yes. Give specific information.............   The home of Margarita Risis (115 N
                                               Livingston Ave, Livingston NJ 07039)     Alimony:    $ _____
                                                                                        Maintenance:  $ _____
                                                                                        Support:      $ _____
                                                                                        Divorce settlement: $ _____
                                                                                        Property settlement: $    700,000.00

**30. Other amounts someone owes you**
*Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay,  workers` compensation,
Social Security benefits; unpaid loans you made to someone else

☐ No

☑ Yes. Give specific information.............   Daniel Markus Inc.
                                                                                        $    800,000.00

Debtor 1  Daniel M. Risis
    First Name    Middle Name    Last Name        Case number (if known) 23-11800-7NEW

**31. Interests in insurance policies**
*Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance

☐ No
☑ Yes. Name the insurance company
of each policy and list its value. ...

| Company name: | Beneficiary: | Surrender or refund value: |
|---|---|---|
| TransAmerica | Mallary Risis | $ 3,000,000.00 |
|  |  | $ |
|  |  | $ |

**32. Any interest in property that is due you from someone who has died**
If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because someone has died.

☑ No
☐ Yes. Give specific information............          $

**33. Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**
*Examples:* Accidents, employment disputes, insurance claims, or rights to sue

☐ No
☑ Yes. Describe each claim. ...............  See Attached.          $ 61,000,000.00

**34. Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**

☐ No
☑ Yes. Describe each claim. ...............  See Attached          $ 26,000,000.00

**35. Any financial assets you did not already list**

☐ No
☐ Yes. Give specific information............          $

**36.** Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached
for Part 4. Write that number here .................................................................................................➔   $ 106,131,324.00

---

**Part 5:    Describe Any Business-Related Property You Own or Have an Interest In. List any real estate in Part 1.**

**37. Do you own or have any legal or equitable interest in any business-related property?**

☐ No. Go to Part 6.
☑ Yes. Go to line 38.

Current value of the portion you own?
Do not deduct secured claims or exemptions.

**38. Accounts receivable or commissions you already earned**

☑ No
☐ Yes. Describe......          $

**39. Office equipment, furnishings, and supplies**
*Examples:* Business-related computers, software, modems, printers, copiers, fax machines, rugs, telephones, desks, chairs, electronic devices

☐ No
☑ Yes. Describe......  home office          $ 10,000.00

Debtor 1    Daniel M. Risis
First Name    Middle Name    Last Name

Case number (if known) 23-11800-7NEW

**40. Machinery, fixtures, equipment, supplies you use in business, and tools of your trade**

☑ No
☐ Yes. Describe........ [_____]  $ _____

**41. Inventory**

☐ No
☑ Yes. Describe........ Fresh Cold Storage and Cash Cow Storage    $    2,000,000.00

**42. Interests in partnerships or joint ventures**

☑ No
☐ Yes. Describe ........

| Name of entity: | % of ownership: | |
|---|---|---|
| _____ | ____ % | $ _____ |
| _____ | ____ % | $ _____ |
| _____ | ____ % | $ _____ |

**43. Customer lists, mailing lists, or other compilations**

☑ No
☐ Yes. Do your lists include personally identifiable information (as defined in 11 U.S.C. § 101(41A))?
  ☐ No
  ☐ Yes. Describe......... [_____]  $ _____

**44. Any business-related property you did not already list**

☑ No
☐ Yes. Give specific
   information ..........    $ _____
                            $ _____
                            $ _____
                            $ _____
                            $ _____
                            $ _____

**45. Add the dollar value of all of your entries from Part 5, including any entries for pages you have attached for Part 5. Write that number here** .................................................... ➔  $    2,000,010.00

---

**Part 6:    Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest In.**
If you own or have an interest in farmland, list it in Part 1.

**46. Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?**

☑ No. Go to Part 7.
☐ Yes. Go to line 47.

Current value of the
portion you own?
Do not deduct secured claims
or exemptions.

**47. Farm animals**
*Examples:* Livestock, poultry, farm-raised fish

☐ No
☐ Yes .................. [_____]  $ _____

# EXHIBIT "B"

SKLAR LAW, LLC
By:  Marc H. Stofman, Esq. (Id No.: 034371995)
By:  Jonathan C. Herron, Esquire (Id No.: 190412017)
20 Brace Road, Suite 205
Cherry Hill, NJ 08034
(856) 258-4050
Attorney for the Plaintiff
Our File No. 47578

MAY 1 5 2022

| | |
|---|---|
| PB FINANCING, LLC | : SUPERIOR COURT OF NEW JERSEY |
| | : LAW DIVISION |
| Plaintiff(s) | : ESSEX COUNTY |
| | : |
| vs. | : DOCKET NO: DJ-35584-22 |
| | : |
| DANIEL MARKUS, INC dba | : CIVIL ACTION |
| PERFECT PAWN dba CASH COW | : |
| Dba FLEA MARKET OUTLET; | : |
| DANIEL M. RISIS; and | : |
| MARGARITA RISIS | : |
| Defendant(s) | : ORDER FOR DISCOVERY |
| | : |

Upon reading the foregoing duly verified Petition in this case, presented to me by the Plaintiff herein, I do hereby order and require Daniel Risis to appear and make discovery on oath, concerning Defendant's property and things in action before Marc H. Stofman, Esquire, at 20 Brace Road, Cherry Hill, New Jersey 08034 on August 25, 2022 at the hour of 9:00 A.M.; and

IT IS FURTHER ORDERED that Daniel M. Risis is to provide Marc H. Stofman with the documents and writings set forth in the Petition upon which this Order is based no later than 5:00 P.M. on August 15, 2022; and

IT IS FURTHER ORDERED that a copy of this Order and the Petition upon which it is based, which need not be certified, by served upon said Daniel M. Risis at least 7 days before the return date hereof by certified and/or regular mail, by the attorneys for the Plaintiff.

Given under my hands this ___15th___ day of ___July___, 2022.

_____
Hon. Robert H. Gardner, J.S.C.s

RECEIVED
JUL 2 0 2022
By _____

SKLAR LAW, LLC
By: Marc H. Stofman, Esq. (Id No.: 034371995)
By: Jonathan C. Herron, Esquire (Id No.: 190412017)
20 Brace Road, Suite 205
Cherry Hill, NJ 08034
(856) 258-4050
Attorney for the Plaintiff
Our File No. 47578

| | |
|---|---|
| PB FINANCING, LLC | : SUPERIOR COURT OF NEW JERSEY |
| | : LAW DIVISION |
| Plaintiff(s) | : ESSEX COUNTY |
| | : |
| vs. | : DOCKET NO: DJ-35584-22 |
| | : |
| DANIEL MARKUS, INC dba | : CIVIL ACTION |
| PERFECT PAWN dba CASH COW | : |
| Dba FLEA MARKET OUTLET; | : |
| DANIEL M. RISIS; and | : |
| MARGARITA RISIS | : |
| Defendant(s) | : **PETITION FOR DISCOVERY** |
| | : |

## TO:   **THE HONORABLE JUDGE OF THE SUPERIOR COURT**

The Petition of the attorneys for the Plaintiff in the above-entitled cause, respectfully shows that:

1. On October 18, 2021, the Plaintiff was awarded a judgment against the Defendants, Daniel

   Markus, Inc dba Perfect Pawn dba Cash Cow d/b/a Flea Market Outlet, Daniel M. Risis, and

   Margarita Risis in the amount of $1,008724.03.

2. The judgment was originally entered in District Court of the Second Judicial District of

   the State of Colorado, City and County of Denver (the "Colorado Judgment"). The

   Colorado Judgment was domesticated into the New Jersey Superior Court and entered into

   the records of the Superior Court Clerk's Office on March 15, 2022.

3. There remains due on said judgment the sum of $1,139,390.76, plus interest.

4. Plaintiff is seeking the location of assets which might be executed upon to satisfy the judgment.

5. R. 4:59-1(f) allows a judgment creditor to "examine any person, including the judgment debtor, by proceeding as provided by these rules for the taking of depositions."

6. Plaintiff seeks to depose Defendant Daniel M. Risis pursuant to R. 4:59-1(f).

7. Petitioner prays Your Honor make an Order requiring DANIEL M. RISIS, to appear and to make discovery upon oath, concerning the property and things of the Defendant before Marc H. Stofman, Esquire at a time to be designated in said Order, and to provide the following designated items, if they are in his possession, no later than 10 days prior to the deposition:

   A. All deeds to real property in which Defendant has an interest.

   B. A list of all corporate entities in which Daniel M. Risis currently has any ownership interest.

   C. A list of all corporate entities in which Daniel M. Risis had any ownership interest within the last 4 years.

   D. All tax returns for Daniel M. Risis, both State and Federal, for the last 4 years.

   E. All tax returns for the last 4 years of any corporate entity in which Daniel M. Risis currently has any ownership interest.

   F. All tax returns for a corporate entity identified in response to Paragraph C above in which Daniel M. Risis has possession.

   G. All books, records, statements, and other financial records in the possession of Cash Cow Storage, LLC, Perfect Pawn, LLC, Daniel Markus, Inc, Flea Market Outlet, Sunny Orange, LLC, Dalex Development Corp, Black Diamond Development, Yenta, LLC, Mikrobank, LLC, Phillipsburg Antique Mall, and any other company in which Daniel M. Risis has an ownership intertest.

   H. A list of all property belonging to Cash Cow Storage, LLC, Perfect Pawn, LLC, Daniel Markus, Inc, Flea Market Outlet, Sunny Orange, LLC, Dalex

Development Corp, Black Diamond Development, Yenta, LLC, Mikrobank,

LLC, Phillipsburg Antique Mall, and any other company in which Daniel M.

Risis has an ownership intertest.

I.  Bank statements for any and all bank accounts in the name of Daniel M. Risis,

Cash Cow Storage, LLC, Perfect Pawn, LLC, Daniel Markus, Inc, Flea Market

Outlet, and Margarita Risis for the last 12 months.

J.  Bank statements for any corporate entity in which Daniel M. Risis has an

ownership interest for the last 12 months.

K.  For any corporate entity in which Daniel M. Risis previously had an ownership

interest in the last 4 years:

1.  Provide a copy of any and all Agreements for sale of the ownership

interest.

2.  Provide a copy of any and all documents related to the dissolution of the

corporate entity.

3.  Provide a copy of any and all other documents related to the sale of the

ownership interest and/or dissolution of the corporate entity.

L.  For any real property owned by Daniel Markus Inc, Perfect Pawn, Cash Cow

Storage, LLC, Flea Market Outlet, Daniel M. Risis, and Margarita Risis provide:

1.  A copy of the Deed to the real property.

2.  A copy of any and all mortgage for which the real property is collateral.

3.  A copy of any lease agreement with any tenant of the identified real

property.

4.  A copy of any and all documents related to any other encumbrance on

any identified real property.

M. For any real property previously owned by Daniel Markus Inc, Perfect Pawn,

   Cash Cow Storage, LLC, Flea Market Outlet, Daniel M. Risis, and Margarita

   Risis in the last 4 years provide:

   1. A copy of the Deed to the real property.

   2. All closing documents related to the sale of the property.

   3. The contract of sale for the sale of the property.

N. For any real property owned by a corporate entity in which Daniel M. Risis has

   an ownership interest provide:

   1. A copy of the Deed to the real property.

   2. A copy of any and all mortgage for which the real property is collateral.

   3. A copy of any lease agreement with any tenant of the identified real
      property.

   4. A copy of any and all documents related to any other encumbrance on
      any identified real property.

O. For any real property previously owned in the last 4 years by a corporate entity in

   which Daniel M. Risis has an ownership interest provide:

   1. A copy of the Deed to the real property.

   2. All closing documents related to the sale of the property.

   3. The contract of sale for the sale of the property.

P. Appraisals of all real property in which Defendant has an interest.

Q. Appraisals of all real property owned by a corporate entity in which Daniel M.

   Risis has an interest.

R. Schedule of property /assets of Defendants and their location, including, but not

   limited to: all goods, chattels debts or loans due or to become due to Defendants,

   accounts receivable, vehicles, machinery and equipment.

S.  For all property/assets identified by the Defendant, the Defendant is to bring any

document in his possession related to any lien(s) on the property.

T.  Any paystub from a current employer of Daniel M. Risis.


Dated: 7/14/22                                    By: _____

Marc H. Stofman, Esquire
Jonathan C. Herron, Esquire (x)
Attorney for Plaintiffs

## CERTIFICATION IN LIEU OF OATH OR AFFIDAVIT

I certify that the foregoing statements made by me in the attached Petition for Discovery
are true. I am aware that if any of the foregoing statements made by me are willfully false, I am
subject to punishment for contempt of court.

Dated: 7/14/22                                    By: _____

Marc H. Stofman, Esquire
Jonathan C. Herron, Esquire (x)
Attorney for Plaintiffs